JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS
Nina Philip

**DEFENDANTS**
Temple University Hospital, Inc.

**(b)**  County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Bryan M. Hanratty, Esquire; Christopher P. Lynett, Esquire
Keches Law Group, P.C.
620 Sentry Parkway, Suite 210, Blue Bell, PA 19422

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1   U.S. Government Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

❏ 2   U.S. Government Defendant

❏ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY**　**PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane　❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product　Product Liability | | | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | Liability　❏ 367 Health Care/ | | | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel &　Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 450 Commerce |
| & Enforcement of Judgment | Slander　Personal Injury | | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers'　Product Liability | | ❏ 830 Patent | ❏ 470 Racketeer Influenced and |
| ❏ 152 Recovery of Defaulted | Liability　❏ 368 Asbestos Personal | | ❏ 840 Trademark | Corrupt Organizations |
| Student Loans | ❏ 340 Marine　Injury Product | | | ❏ 480 Consumer Credit |
| (Excludes Veterans) | ❏ 345 Marine Product　Liability | | | ❏ 490 Cable/Sat TV |
| ❏ 153 Recovery of Overpayment | Liability　**PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle　❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle　❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 862 Black Lung (923) | ❏ 890 Other Statutory Actions |
| ❏ 190 Other Contract | Product Liability　❏ 380 Other Personal | Relations | ❏ 863 DIWC/DIWW (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal　Property Damage | ❏ 740 Railway Labor Act | ❏ 864 SSID Title XVI | ❏ 893 Environmental Matters |
| ❏ 196 Franchise | Injury　❏ 385 Property Damage | ❏ 751 Family and Medical | ❏ 865 RSI (405(g)) | ❏ 895 Freedom of Information |
| | ❏ 362 Personal Injury -　Product Liability | Leave Act | | Act |
| | Medical Malpractice | ❏ 790 Other Labor Litigation | | ❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**　**PRISONER PETITIONS** | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | ❏ 899 Administrative Procedure |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights　**Habeas Corpus:** | Income Security Act | ❏ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ❏ 220 Foreclosure | ❏ 441 Voting　❏ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ☒ 442 Employment　❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | ❏ 950 Constitutionality of |
| ❏ 240 Torts to Land | ❏ 443 Housing/　Sentence | | 26 USC 7609 | State Statutes |
| ❏ 245 Tort Product Liability | Accommodations　❏ 530 General | | | |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities -　❏ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment　**Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities -　❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other　❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education　❏ 555 Prison Condition | | | |
| | ❏ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding
❏ 2   Removed from State Court
❏ 3   Remanded from Appellate Court
❏ 4   Reinstated or Reopened
❏ 5   Transferred from Another District *(specify)*
❏ 6   Multidistrict Litigation

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sec. 1331
Brief description of cause:
Employment Discrimination

## VII.  REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ❏ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
07/31/2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ Bryan M. Hanratty

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Temple University Hospital_____

---

***RELATED CASE IF ANY:***   Case Number:_____   Judge:_____

1.  Does this case involve property included in an earlier numbered suit?                                               Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?   Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.   *Federal Question Cases:***

☐  1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐  2.  FELA
☐  3.  Jones Act-Personal Injury
☐  4.  Antitrust
☐  5.  Wage and Hour Class Action/Collective Action
☐  6.  Patent
☐  7.  Copyright/Trademark
☒  8.  Employment
☐  9.  Labor-Management Relations
☐  10. Civil Rights
☐  11. Habeas Corpus
☐  12. Securities Cases
☐  13. Social Security Review Cases
☐  14. Qui Tam Cases
☐  15. Cases Seeking Systemic Relief  **\*see certification below\***
☐  16. All Other Federal Question Cases. *(Please specify)*:_____

**B.   *Diversity Jurisdiction Cases:***

☐  1.  Insurance Contract and Other Contracts
☐  2.  Airplane Personal Injury
☐  3.  Assault, Defamation
☐  4.  Marine Personal Injury
☐  5.  Motor Vehicle Personal Injury
☐  6.  Other Personal Injury *(Please specify)*:_____
☐  7.  Products Liability
☐  8.  All Other Diversity Cases:  *(Please specify)*_____
        _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

NINA PHILIP                                  :                        CIVIL ACTION
                                             :
          v.                                 :
                                             :
TEMPLE UNIVERSITY HOSPITAL, INC.   :          NO. 2:26-CV-05421

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (   )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                           (   )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (   )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    (   )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       (   )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           ( x )


07/31/2026                        Bryan M. Hanratty                     Plaintiff
_____               _____          _____
**Date**                          **Attorney-at-law**                  **Attorney for**

(215) 857-9137                    (833) 226-0236                        bhanratty@kecheslaw.com
_____               _____          _____
**Telephone**                     **FAX Number**                       **E-Mail Address**


**(Civ. 660) 10/02**


American LegalNet, Inc.
www.FormsWorkFlow.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NINA K. PHILIP<br>52 East Norton Drive<br>Southampton, Pennsylvania 18966,<br><br>           **Plaintiff,**<br><br>  **v.**<br><br>TEMPLE UNIVERSITY HOSPITAL,<br>INC.<br>3401 North Broad Street<br>Philadelphia, Pennsylvania 19140,<br><br>          **Defendant.** | :<br>:<br>:<br>:    **Civil Action No.**<br>:<br>:<br>:<br>:    **Jury Trial Demanded**<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**CIVIL ACTION COMPLAINT**
**EMPLOYMENT DISCRIMINATION**

Plaintiff, Nina K. Philip, hereby brings this Civil Action Complaint against Defendant, Temple University Hospital, Inc., and in support thereof avers as follows:

**PARTIES**

1.      Plaintiff, Nina K. Philip, is an adult individual who resides at 52 East Norton Drive, Southampton, Pennsylvania 18966. Plaintiff is an Indian woman who, at all times material hereto, was employed by Defendant as a Registered Nurse within Defendant's Emergency Department.

2.      Defendant, Temple University Hospital, Inc., is a business entity of unknown form organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 3401 North Broad Street, Philadelphia, Pennsylvania 19140, which owns, operates, manages, and controls a hospital and emergency department at said location.

3.      At all times material hereto, Defendant was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), and the

Pennsylvania Human Relations Act, 43 P.S. § 954(b), in that Defendant employed fifteen (15) or more employees.

4.      At all times material hereto, Plaintiff and Defendant were parties to a contractual employment relationship within the meaning of 42 U.S.C. § 1981.

5.      At all times material hereto, Defendant acted by and through its agents, servants, workmen, and employees, each of whom was then and there acting within the course and scope of his or her employment with Defendant.

## JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, in that said claims arise under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

7.      This Court has supplemental jurisdiction over Plaintiff's claims arising under the Pennsylvania Human Relations Act pursuant to 28 U.S.C. § 1367, in that said claims share a common nucleus of operative facts with Plaintiff's federal claims and are part of the same case or controversy.

8.      Venue properly lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practices averred herein were committed within this District, the employment records relevant thereto are maintained and administered within this District, and Plaintiff would have continued to be employed within this District but for the unlawful conduct averred herein.

**ADMINISTRATIVE EXHAUSTION**

9.      Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") averring discrimination on the bases of race, national origin, and sex.

10.      Plaintiff's Charge of Discrimination was filed within three hundred (300) days of the unlawful employment practices averred herein.

11.      Plaintiff's Charge of Discrimination was dually filed with the Pennsylvania Human Relations Commission, and more than one (1) year has elapsed since the filing thereof.

12.      The EEOC issued a Notice of Right to Sue to Plaintiff.

13.      This Civil Action Complaint is filed within ninety (90) days of Plaintiff's receipt of the aforesaid Notice of Right to Sue.

14.      Each and every cause of action averred herein falls within the scope of Plaintiff's Charge of Discrimination, or within the scope of the investigation which could reasonably be expected to grow out of said Charge.

15.      Plaintiff has exhausted all administrative remedies and has satisfied all conditions precedent to the institution of this action.

**FACTS OF THE CASE**

16.      Plaintiff, Nina K. Philip, is an Indian woman.

17.      By virtue of her race, her national origin, and her sex, Plaintiff is a member of a protected class.

18.      Plaintiff is a duly licensed Registered Nurse who, as of the date of her termination, possessed approximately fourteen years' experience in the practice of nursing.

19.    At all times material hereto, Plaintiff was employed by Defendant as a Registered Nurse assigned to Defendant's Emergency Department, wherein her duties and responsibilities included the performance of triage and the management of the nurse intake station designated as "Triage 1."

20.    At all times material hereto, Plaintiff possessed each and every license, certification, and credential requisite to her position, was qualified for said position, satisfactorily performed the duties thereof, and met Defendant's legitimate expectations.

21.    Plaintiff remained qualified for her position at the time of her termination.

22.    The Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, mandates that any individual who presents to a hospital emergency department be afforded an appropriate medical screening examination by a qualified provider.

23.    Every patient who presents to Defendant's Emergency Department is entitled to a medical screening examination by a provider, without regard to the nature or apparent severity of the presenting complaint.

24.    At all times material hereto, Plaintiff and the comparator employees identified below were subject to the same EMTALA obligations, the same hospital policies, and the same disciplinary standards.

**The Conduct Attributed to Plaintiff**

25.    On or about October 3, 2025, Plaintiff was assigned to the Triage 1 station within Defendant's Emergency Department.

26.    Under the staffing grid applicable to Defendant's Emergency Department, the Triage 1 station was required to be staffed by two (2) Registered Nurses.

27.   Notwithstanding that staffing requirement, Defendant assigned Plaintiff to operate the Triage 1 station alone on October 3, 2025.

28.   Defendant maintained daily nursing assignment records identifying the nurses assigned to each area of the Emergency Department, including Triage 1, which records are expected to confirm that Plaintiff was the only Registered Nurse assigned to Triage 1 at the time of the subject encounter.

29.   Defendant regularly operated its Emergency Department, including Triage 1, below the staffing levels established by the applicable staffing grid.

30.   A patient ("Patient") presented to the Triage 1 station.

31.   Prior to arriving at the Triage 1 station, Patient was admitted to and treated at Defendant's hospital.

32.   That same day, Patient was discharged from Defendant's hospital and thereafter remained outside the hospital for an extended period of time.

33.   At some point, Patient fell to the ground.

34.   Security arrived and brought the Patient back to Triage 1.

35.   When Patient arrived with security to the front of the line, Patient could not communicate with Plaintiff.

36.   Plaintiff reasonably believed that a language barrier prevented Patient from communicating with her.

37.   She then attempted to use the mandated language-line service available, but due to lack of administrative set-up, could not access the translation service.

38.   Additionally, Plaintiff could not verify the Patient's basic details, such as his name and date of birth.

39.    Plaintiff requested that security temporarily move Patient from the front of the triage line to a designated area within the Emergency Department waiting room while security attempted to identify him.

40.    Plaintiff never instructed nor requested security to remove Patient from the waiting area; Patient was to be kept in the waiting area while security attempted to identify him.

41.    Plaintiff expressly intended and understood that Patient would remain inside the Emergency Department and available for further triage and medical screening.

42.    Plaintiff did not refuse Patient, deny him a medical screening examination, or order, direct, or authorize his removal from the Emergency Department.

43.    Without Plaintiff's knowledge and without her authorization, Temple police removed said patient from the Emergency Department.

44.    Said Patient thereafter died.

45.    Following Patient's death, the Pennsylvania Department of Health and/or other governmental authorities commenced an investigation concerning Defendant's compliance with EMTALA.

46.    The circumstances surrounding the patient's encounter  implicated systemic and institutional failures within Defendant's Emergency Department, including Defendant's failure to staff Triage 1 in accordance with the applicable staffing grid, its failure to ensure that the required language-line service was operational and accessible, and its failure to ensure that security and police personnel understood and complied with Defendant's EMTALA obligations.

47.    Defendant did not impose comparable discipline upon the management, security, police, or administrative personnel responsible for the institutional failures surrounding the encounter.

48.    Rather than accept responsibility for or adequately address those institutional failures, Defendant attributed the incident to Plaintiff individually and terminated her employment.

49.    The termination of Plaintiff's employment constitutes an adverse employment action.

**Comparators' Violation of EMTALA**

50.    At all times material hereto, Defendant employed at least two white male Registered Nurses within its Emergency Department who committed violations of EMTALA of a seriousness comparable to, and indeed greater than, the conduct attributed to Plaintiff, and who were nevertheless retained in Defendant's employ.

51.    Two (2) such employees are identified herein as Nurse One and Nurse Two.

52.    Nurse One is a white male Registered Nurse employed within Defendant's Emergency Department, who has been employed for approximately 25 years.

53.    Nurse Two is a white male Registered Nurse employed within Defendant's Emergency Department who possessed less seniority than Plaintiff.

54.    Nurse One and Nurse Two each held the same position as Plaintiff, Registered Nurse.

55.    Nurse One and Nurse Two each worked within the same department and at the same facility as Plaintiff, Defendant's Emergency Department.

56.    Nurse One and Nurse Two each performed substantially the same duties and patient-care responsibilities as Plaintiff, including the performance of triage and the management of the nurse intake station.

57.    Nurse One and Nurse Two each reported to the same supervisors and to the same leadership team as Plaintiff.

58.    Nurse One and Nurse Two were each subject to the same EMTALA obligations, the same hospital policies, and the same disciplinary standards as Plaintiff.

59.    Nurse One and Nurse Two each committed their respective violations while performing emergency-department triage or intake functions substantially similar to those performed by Plaintiff.

60.    Several weeks after the encounter described above, Nurse One refused a patient encounter to a homeless individual who was a frequent presenter to Defendant's Emergency Department, upon the stated ground that said individual had recently been discharged.

61.    Said individual was entitled to a medical screening examination by a provider.

62.    Nurse One's refusal prevented the patient from receiving the medical screening examination required by EMTALA.

63.    A coworker who witnessed the aforesaid refusal filed a Midas report documenting the same. Midas reports are transmitted to Defendant's leadership, to its risk management department, and to its senior administration, for the evaluation of patient safety and potential hospital liability.

64.    The filing of the Midas report placed Defendant's management and risk-management personnel on notice of Nurse One's conduct.

65. Nurse One was not terminated and remained employed by Defendant following the incident.

66. Nurse Two likewise violated his EMTALA obligations when he refused a patient who was thirty-six (36) weeks pregnant and who arrived at Defendant's Emergency Department by way of emergency medical services.

67. Nurse Two advised the responding medics that Defendant's main campus no longer maintained an obstetrics and gynecology service and directed said medics to transport the patient to another facility.

68. The medics thereupon departed with said patient, who was consequently denied a medical screening examination and diverted from Defendant's Emergency Department.

69. Nurse Two's conduct involved an express direction that emergency medical personnel take a patient who had presented to Defendant's Emergency Department to another facility without first providing the patient a medical screening examination.

70. Nurse Two was not terminated and remained employed by Defendant within its Emergency Department.

**Disparate Treatment**

71. Nurse One and Nurse Two each outright refused patients the medical screening examinations to which said patients were statutorily entitled.

72. The violations committed by Nurse One and Nurse Two resulted from their own affirmative decisions to refuse or redirect patients, rather than from the actions of security personnel, communication barriers, or institutional staffing failures.

73.    Plaintiff, by contrast, refused no patient and attempted to sequence Patient within the triage process while working alone at a station that was staffed at only fifty percent (50%) of the level required by the applicable staffing grid.

74.    The conduct of Nurse One and Nurse Two was of a seriousness comparable to, and arguably greater than, the conduct attributed to Plaintiff. In those instances, the respective nurses directly refused or redirected the patient where no communication barriers existed. Here, by contrast, Plaintiff did not direct Patient's removal, and Patient was removed from the Emergency Department by Temple police without Plaintiff's knowledge or authorization.

75.    The differing identities and presenting conditions of the respective patients are immaterial, because every patient who presents to Defendant's Emergency Department is entitled to a medical screening examination by a provider, without regard to the nature or severity of the presenting complaint.

76.    Plaintiff and the aforesaid comparators were similarly situated in all material respects, including position, department, facility, duties and responsibilities, supervisory chain, applicable policies, applicable disciplinary standards, and the performance of substantially similar emergency-department triage or intake functions.

77.    Despite the comparable seriousness of the respective incidents, Defendant terminated Plaintiff, an Indian woman, while retaining the white male comparators.

**Pretext**

78.    Defendant's stated reason for the termination of Plaintiff's employment, namely that Plaintiff violated EMTALA, is false and constitutes a pretext for unlawful discrimination.

79.    Plaintiff did not commit the conduct attributed to her by Defendant. Plaintiff refused no patient, and Plaintiff directed the removal of no patient from the Emergency Department.

80.    The EMTALA deficiencies existing within Defendant's Emergency Department were systemic and institutional in nature and were attributable, in whole or in part, to Defendant's own failures, including its failure to staff the Triage 1 station with the two (2) Registered Nurses required by the applicable staffing grid, its failure to ensure that the language-line service was operational and accessible, and its failure to implement and enforce adequate triage, security, training, and patient-management protocols.

81.    Defendant terminated Plaintiff while it was under regulatory scrutiny concerning the patient encounter and its compliance with EMTALA.

82.    Defendant's decision to place sole or disproportionate responsibility upon Plaintiff, while disregarding the staffing, language-access, security, police, and institutional failures surrounding the encounter, demonstrates that its stated explanation for her termination was incomplete, inconsistent, and pretextual.

83.    Defendant's professed commitment to EMTALA compliance is contradicted by its subsequent treatment of two white male Registered Nurses who committed comparable or more direct violations of EMTALA but were not terminated and remained employed.

84.    Defendant's decision to terminate Plaintiff while retaining white male employees who engaged in comparable misconduct supports the conclusion that EMTALA compliance was not the true reason for Plaintiff's termination.

85.    Defendant enforced its EMTALA policies and its disciplinary policies inconsistently, and did so in a manner which disfavored Plaintiff by reason of her race, her national origin, and her sex.

86.    In the alternative, Plaintiff's race, national origin, and sex were motivating factors in Defendant's decision to terminate her employment, notwithstanding the existence of any other asserted reason.

## COUNT I — TITLE VII
## RACE AND NATIONAL ORIGIN DISCRIMINATION
**Plaintiff, Nina K. Philip**
**v.**
**Defendant, Temple University Hospital, Inc.**

87.    Plaintiff incorporates by reference the preceding paragraphs, inclusive, as though the same were set forth at length herein.

88.    Plaintiff is a member of protected classes by virtue of her race and her national origin.

89.    Plaintiff was qualified for her position and satisfactorily performed the duties thereof.

90.    Defendant subjected Plaintiff to an adverse employment action by terminating her employment.

91.    Defendant terminated Plaintiff's employment under circumstances giving rise to an inference of unlawful discrimination, in that Defendant retained, and imposed lesser discipline upon, similarly situated white employees who engaged in misconduct comparable to and greater than that attributed to Plaintiff.

92.    The conduct of Defendant was intentional, willful, and undertaken with malice or with reckless indifference to Plaintiff's federally protected rights and protected status.

93.　As a direct and proximate result of the aforesaid unlawful conduct of Defendant, Plaintiff has suffered, and continues to suffer, a loss of wages, a loss of benefits, an impairment of her earning capacity, emotional distress, humiliation, and other damages.

**WHEREFORE**, Plaintiff, Nina K. Philip, demands judgment in her favor and against Defendant, Temple University Hospital, Inc. in excess of $75,000.00, together with back pay, front pay, lost benefits, compensatory damages, punitive damages, reinstatement or front pay in lieu thereof, prejudgment and post-judgment interest, attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), and any and all other relief this Court deems just and proper.

**<u>COUNT II — TITLE VII</u>**
**<u>SEX DISCRIMINATION</u>**
**Plaintiff, Nina K. Philip**
**v.**
**Defendant, Temple University Hospital, Inc.**

94.　Plaintiff incorporates by reference the preceding paragraphs, inclusive, as though the same were set forth at length herein.

95.　Plaintiff is a member of a protected class by virtue of her sex.

96.　Plaintiff was qualified for her position and satisfactorily performed the duties thereof.

97.　Defendant subjected Plaintiff to an adverse employment action by terminating her employment.

98.　Defendant terminated Plaintiff's employment under circumstances giving rise to an inference of unlawful discrimination, in that Defendant retained, and imposed lesser discipline upon, similarly situated male employees who engaged in misconduct comparable to and greater than that attributed to Plaintiff.

99.   Defendant thereby discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment by reason of her sex, in violation of 42 U.S.C. § 2000e-2.

100.   The conduct of Defendant was intentional, willful, and undertaken with malice or with reckless indifference to Plaintiff's federally protected rights.

101.   As a direct and proximate result of the aforesaid unlawful conduct of Defendant, Plaintiff has suffered, and continues to suffer, a loss of wages, a loss of benefits, an impairment of her earning capacity, emotional distress, humiliation, and other damages.

**WHEREFORE**, Plaintiff, Nina K. Philip, demands judgment in her favor and against Defendant, Temple University Hospital, Inc., in excess of $75,000.00 together with back pay, front pay, lost benefits, compensatory damages, punitive damages, reinstatement or front pay in lieu thereof, prejudgment and post-judgment interest, attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), and any and all other relief this Court deems just and proper.

<u>**COUNT III — 42 U.S.C. § 1981**</u>
<u>**RACE DISCRIMINATION**</u>
**Plaintiff, Nina K. Philip**
**v.**
**Defendant, Temple University Hospital, Inc.**

102.   Plaintiff incorporates by reference the preceding paragraphs, inclusive, as though the same were set forth at length herein, save that this Count is predicated exclusively upon race.

103.   Pursuant to 42 U.S.C. § 1981, Plaintiff possessed and sought to enjoy the same right as is enjoyed by white citizens to make, perform, modify, and enforce her contract of employment, and to enjoy all benefits, privileges, terms, and conditions of that contractual relationship.

104.    Defendant intentionally discriminated against Plaintiff by reason of her race in terminating her employment while retaining, and imposing lesser discipline upon, similarly situated white employees who engaged in misconduct comparable to and greater than that attributed to Plaintiff.

105.    Defendant thereby impaired Plaintiff's right to the making, performance, modification, and termination of her contract of employment, and to the enjoyment of all benefits, privileges, terms, and conditions thereof, in violation of 42 U.S.C. § 1981.

106.    The conduct of Defendant was intentional, willful, and undertaken with malice or with reckless indifference to Plaintiff's federally protected rights.

107.    As a direct and proximate result of the aforesaid unlawful conduct of Defendant, Plaintiff has suffered, and continues to suffer, a loss of wages, a loss of benefits, an impairment of her earning capacity, emotional distress, humiliation, and other damages.

**WHEREFORE**, Plaintiff, Nina K. Philip, demands judgment in her favor and against Defendant, Temple University Hospital, Inc. in excess of $75,000.00, together with back pay, front pay, lost benefits, compensatory damages, punitive damages, reinstatement or front pay in lieu thereof, prejudgment and post-judgment interest, attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1988, and any and all other relief this Court deems just and proper.

### COUNT IV — PENNSYLVANIA HUMAN RELATIONS ACT
### RACE AND NATIONAL ORIGIN DISCRIMINATION
**Plaintiff, Nina K. Philip**
**v.**
**Defendant, Temple University Hospital, Inc.**

108.    Plaintiff incorporates by reference the preceding paragraphs, inclusive, as though the same were set forth at length herein.

109. The Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*., prohibits an employer from discriminating against an employee with respect to the terms, conditions, or privileges of employment by reason of race or national origin.

110. Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment, and terminated her employment, by reason of her race and her national origin, in violation of the Pennsylvania Human Relations Act.

111. As a direct and proximate result of the aforesaid unlawful conduct of Defendant, Plaintiff has suffered, and continues to suffer, a loss of wages, a loss of benefits, an impairment of her earning capacity, emotional distress, humiliation, and other damages.

**WHEREFORE**, Plaintiff, Nina K. Philip, demands judgment in her favor and against Defendant, Temple University Hospital, Inc., together with back pay, front pay, lost benefits, compensatory damages, reinstatement or front pay in lieu thereof, prejudgment and post-judgment interest, attorneys' fees and costs of suit, and any and all other relief this Court deems just and proper.

### COUNT V — PENNSYLVANIA HUMAN RELATIONS ACT
### SEX DISCRIMINATION
**Plaintiff, Nina K. Philip**
**v.**
**Defendant, Temple University Hospital, Inc.**

112. Plaintiff incorporates by reference the preceding paragraphs, inclusive, as though the same were set forth at length herein.

113. The Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*., prohibits an employer from discriminating against an employee with respect to the terms, conditions, or privileges of employment by reason of sex.

114.    Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment, and terminated her employment, by reason of her sex, in violation of the Pennsylvania Human Relations Act.

115.    As a direct and proximate result of the aforesaid unlawful conduct of Defendant, Plaintiff has suffered, and continues to suffer, a loss of wages, a loss of benefits, an impairment of her earning capacity, emotional distress, humiliation, and other damages.

**WHEREFORE**, Plaintiff, Nina K. Philip, demands judgment in her favor and against Defendant, Temple University Hospital, Inc., together with back pay, front pay, lost benefits, compensatory damages, reinstatement or front pay in lieu thereof, prejudgment and post-judgment interest, attorneys' fees and costs of suit, and any and all other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff, Nina K. Philip, hereby demands a trial by jury as to all issues so triable.

**KECHES LAW GROUP, P.C.**

By: _____
     /s/ Bryan M. Hanratty
     Bryan M. Hanratty, Esquire
     PA I.D. No. 326743
     Christopher P. Lynett, Esquire
     PA I.D. No.
     Keches Law Group, P.C.
     620 Sentry Parkway, Suite 210
     Blue Bell, Pennsylvania 19422
     (215) 857-9137
     bhanratty@kecheslaw.com
     clynett@kecheslaw.com
     *Attorneys for Plaintiff*

Date: 07/31/2026